

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. CR 05-1202-R |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER GRANTING DEFENDANT'S<br>) MOTION TO DISMISS FOR<br>) LACK OF JURISDICTION |
| TAKIA LYNNEA CAMPBELL, | ) |
| Defendant. | ) |

I.

INTRODUCTION

Before the Court is Defendant's motion to dismiss the petition to revoke supervised release on the ground that the Court lacks jurisdiction over the petition because 1) the warrant for Defendant's arrest was issued after the term of supervised release had ended, and 2) the petition, which contained the application for the warrant, was not properly sworn to. For the reasons set forth below, the motion is GRANTED.

II.

SUMMARY OF FACTS AND PROCEEDINGS

In 1995, Defendant was convicted in federal court in Texas of drug trafficking and carrying a firearm in furtherance of drug trafficking and sentenced to 138 months in prison, followed by a four-year term of supervised release. Defendant was incarcerated at the Federal Correctional Institute ("FCI") in Taft, California. In June 2003, Defendant was transferred by the Federal Bureau of Prisons ("BOP") from FCI Taft to Cornell Community Corrections Center ("Cornell"). On January 27, 2004, Defendant was released from Cornell and formally placed on supervised release. In December 2005, his supervision was transferred from Texas to the Central District of California. His case was assigned to Judge Real. On March 26, 2006, Judge Real revoked Defendant's supervision for violating the terms and conditions of his release and remanded Defendant to custody for six months. Judge Real also readmitted Defendant to the previously imposed supervised release term. In September 2006, Defendant completed the custody portion of Judge Real's order and was placed back on supervised release.

According to the government, Defendant failed to comply with the terms and conditions of supervised release following his release. On January 9, 2008, U.S. Probation Officer Gregory J. Metoyer, Defendant's probation officer, submitted a petition for revocation and a request for an arrest warrant. The petition contained a signature block in which Metoyer purportedly declared under penalty of perjury that the allegations contained therein were true and correct, but it was not signed by him. Instead, Metoyer's supervisor signed for Metoyer. On January 14, 2008, Judge Real issued a bench warrant for

2

Defendant's arrest. On January 31, 2008, Defendant was arrested on the warrant.

## II.

## DISCUSSION

A. <u>Defendant's Supervised Release Term Did Not Begin To Run Until He Was Released From The Community Corrections Facility</u>

Defendant contends that his four-year supervised release term began on June 24, 2003, when he was transferred from FCI Taft to Cornell and that it expired on June 24, 2007. He argues that, as a result, Judge Real did not have authority to issue a bench warrant in January 2008 after his supervised release term had ended. Though the law is not entirely clear on this issue, the Court concludes that Defendant's term of imprisonment did not end until he was released from Cornell and, therefore, his supervised release term did not begin until then. As a result, the four-year term began on January 27, 2004, and ended on January 26, 2008. Thus, the district court had jurisdiction to issue a warrant for supervised release violations on January 14, 2008.

There is very little law on this issue. Defendant cites *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), for the proposition that release to a half-way house constitutes release from imprisonment, ending the prison term and beginning the supervised release term. *Sullivan*, however, is not directly on point. The defendant in *Sullivan* was released from state custody after serving a concurrent state and federal term in state prison and placed in a state pre-release center for six months. The Ninth Circuit concluded that the state did not consider confinement in the pre-release center as imprisonment and, therefore, the defendant had been released from

prison when he was placed in the pre-release center. *Id.* at 972 ("The features and goals of Pre-Release Centers in Montana and elsewhere are different from imprisonment, and instead are much more similar to those of federal supervised release.").

The government argues that the federal system is different. BOP is required by statute to place federal prisoners in a community correctional center for the last six months of their sentence, but that placement is under the auspices and the supervision of the BOP, not the Probation Department of the Court. As the government points out, if a prisoner violates the rules of the community correctional center, he is not haled before the Court. Instead, he is dealt with by BOP or the community correctional center.[1]

Defendant also points to a November 2007 decision by Judge Wilson in a similar case on similar facts in which, according to Defendant, Judge Wilson found that release from a federal prison and placement in a correctional community center signals the end of the prison term and the beginning of supervised release. *See United States v. Giddens*, No. CR 04-52-SVW (C.D. Cal.). Though the Court would certainly consider Judge Wilson's analysis as guidance in this case, Judge Wilson dismissed the case in a four-sentence order that does not explain the reasoning behind his decision. Thus, there is nothing in *Giddens* for the Court to rely on.

---

[1] The probation officer testified during the preliminary hearing that, typically, a probation officer is assigned to a releasee when the releasee is transferred from prison to the community corrections facility. He further testified that, in a situation where a releasee fails to follow the rules, he is dealt with by the community corrections facility or the BOP, not the Court.

4

The government points to a district court case out of Idaho in which the district judge there rejected the defendant's argument that release from federal prison to a county jail work release program triggered the end of the prison term and the beginning of supervised release. *See United States v. Miller*, 2007 WL 4261929 (D. Id. 2007). Defendant argues that it is an unpublished case and not binding on this Court. The Court agrees that it is unpublished--as is *Giddens*--and not binding, but the reasoning applied by the district judge in that case is certainly persuasive.

Ultimately, the Court concludes that the BOP's practice of releasing prisoners to a community correctional facility or half-way house six months before a prison term ends is not tantamount to the termination of the prison term and the beginning of supervised release. Instead, it is a continuation of the prison term, albeit in an unsecured facility where the prisoner has the freedom under certain conditions to come and go from the facility. Jurisdiction is not transferred from BOP to probation at that time and supervised release does not begin then. Supervised release begins when the entire prison term is over, which occurs when a prisoner is released from the community correctional facility at the conclusion of his term.

B. <u>The Petition Is Defective Because It Was Not Signed By Metoyer Under Oath</u>

In 2004, the Ninth Circuit ruled in *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), that a probation officer seeking an arrest warrant for a supervised release violation must support his application by oath or affirmation. In doing so, the circuit set a new bar for proceeding against supervised releasees in revocation proceedings. The court held that a district court is without

jurisdiction to proceed in a supervised release revocation proceeding unless the warrant was issued "'upon probable cause, supported by Oath or affirmation' as required by the Fourth Amendment." *Id.* at 907.

The petition presented to the district court in this case is defective. It was prepared and presented by Probation Officer Gregory J. Metoyer, Defendant's probation officer, but Metoyer did not sign the petition under penalty of perjury. His supervisor signed the petition on Metoyer's behalf. Metoyer explained during the preliminary hearing that his office routinely obtains the warrants in this fashion, i.e., a supervisor signing the affirmation on behalf of the probation officer, because a supervisor is required to approve all requests for a warrant. The Court concludes that this practice does not comport with the Fourth Amendment. There is nothing before this Court to suggest that Metoyer's supervisor had knowledge of the facts he was attesting to on behalf of Metoyer in the petition. He was merely signing off on the petition for Metoyer. Nor, can Metoyer be held to answer for what is included in the petition because he never signed it. Thus, ultimately, in the Court's view, no one from probation has attested to the facts in the petition, which runs counter to the requirements of the Fourth Amendment and mandates dismissal under *Vargas-Amaya*.

The government cites the Court to *United States v. Jeremiah*, 493 F.3d 1042 (9th Cir. 2007), in which the Ninth Circuit held in a supervised release case that, even where the probation officer failed to properly attest to the facts in the revocation petition, a releasee was not entitled to have his conviction for supervised release violations overturned on appeal. *Jeremiah* is not on point. First, the defendant in *Jeremiah* did not raise the issue until appeal. Thus,

he was already convicted of the violations. *Id.* at 1044-45. That is not the case here. Defendant has not even had a hearing on the merits of the petition, yet. Second, the circuit court noted in *Jeremiah* that, because the defendant had been arrested during the term of his supervised release, *Vargas-Amaya* did not apply. *Id.* at 1045. Defendant in the case at bar was arrested after the term of his supervised release had ended. Thus, even under *Jeremiah*, Defendant should prevail.

When all is said and done, it appears clear to the Court that the petition which led to the arrest warrant in this case was not executed properly because the probation officer who prepared it and purportedly attested to it did not sign it, his supervisor did. Further, there is no indication on the petition that the supervisor was attesting to the facts in the warrant. Under *Vargas-Amaya*, the warrant is, therefore, defective and the Court is without jurisdiction to proceed. *Vargas-Amaya*, 389 F.3d at 907.

C.  <u>The Government Is Not Entitled To Tolling</u>

The government argues that Defendant had absconded from supervision and was, therefore, a fugitive during much of the final months of his supervision. It argues that, as early as November 2007, when he failed to report and failed to submit a monthly report, he was in fugitive status. It contends that, because Defendant was a fugitive, his period of supervised release was tolled and the government should now be able to file an amended petition that is properly attested to. For the following reasons, the Court disagrees.

Though Defendant failed to submit his monthly reports after October 2007, and failed to report for numerous dates between October 2007 and January 2008, his behavior after October 2007 does not appear

to be any different than his behavior before then. Defendant was regularly failing to comply with the terms and conditions of his release, including failing to report as ordered. If his failures to comply trigger a tolling of the supervised release period, then the period never began to run because Defendant was never fully compliant.

The government's citations to *United States v. Murguia-Oliveros*, 421 F.3d 951 (9th Cir. 2005), and *United States v. Bristow*, 2007 WL 2345037 (S.D. Cal. 2007), does not compel a different result. In *Murguia-Oliveros*, the Ninth Circuit held that an illegal alien who was prohibited under the terms of his supervised release from returning to the United States and required to report to his probation officer in the event that he ignored that condition and returned anyway had absconded from supervision when he returned to the United States and failed to report to probation, even after receiving a letter from probation telling him to do so. *Murguia-Oliveros*, 421 F.3d at 952. The court concluded that, because the defendant had absconded, the supervised release term was tolled until the arrest warrant was issued. *Id.* at 954.

The situation in the case at bar is different. Though Defendant was non-compliant in that he failed to regularly report and otherwise follow instructions from his probation officer, he had contact with the probation officer as late as December 26, 2007, when he called the probation officer and told him why he had missed an appointment with the probation officer on that date. Further, it appears that Defendant's conduct in December 2007 was no different than his conduct throughout 2007. Sometimes Defendant responded to calls and letters from the probation office, and sometimes he did not. If his failure to comply with the directives of his probation officer triggers

tolling, his period of supervision should be tolled for most, if not all, of the supervision period because he failed to follow the rules and directives for most of the period. The Court chooses not to read *Murguia-Oliveros* so broadly. Where, as here, the supervised release violations occur throughout the period of supervision, the supervised release period is not tolled as a result of a releasee's violation of a term or condition of his release. Absent something more, like moving and not providing a forwarding address, or a complete and utter failure to respond to the probation officer's entreaties, the period of supervision is not tolled.

*Brisow*, too, does not require a different result. There, the releasee failed to comply with the terms and conditions of his release and an arrest warrant was issued for his arrest. *Bristow*, 2007 WL 2345037, at *1, *4. The releasee was told by his probation officer that there was an outstanding warrant and that he should turn himself in. *Id.* at *4. The releasee said that he would, but failed to report to his probation officer and stopped having contact with him. *Id.* The district court found that the releasee's failure to report to his probation officer rendered him a fugitive, tolling the period of his supervised release. *Id.*

*Bristow* is not on point. The record in the case at bar is not complete as to what Defendant was doing in December 2007 and January 2008. Defendant did have contact with his probation officer on December 26, 2007, at which time he was told to report the following day, and he failed to report the following day. Further, he did not submit a monthly report in January 2008. The government does not allege that he was told to report after December 27, 2007. The significance of this fact is that Defendant's conduct in December and

1  January was no different than it had been throughout the supervised
2  release period.  Defendant sometimes complied with the probation
3  officer's orders and sometimes did not.  His failure to comply in
4  December 2007 and January 2008, therefore, should not trigger a
5  different legal status, i.e., fugitive status, because the probation
6  office determined in January 2008 that Defendant's conduct over the
7  preceding 13 months warranted revocation.

8  Absent tolling of the supervised release period, the latest date
9  the supervised release term expired in this case was January 26, 2008.
10 Thus, the government can no longer submit a revocation petition to the
11 Court.  As such, the Court orders that Defendant be released from
12 custody forthwith.[2]

13 IT IS SO ORDERED.

14 DATED:    February 13, 2007.

                                        /s/ Patrick J. Walsh
                                        _____
                                        PATRICK J. WALSH
                                        UNITED STATES MAGISTRATE JUDGE

S:\PJW\CRIMINAL\Campbell\Ord_granting Ds MTD1.wpd

---

[2] Though the Court had told the government at the hearing that it would stay this order to allow the government to appeal, government counsel has contacted the court clerk and informed her that the government has elected not to appeal.  For that reason, the order will not be stayed.  The Court commends the Assistant United States Attorney for his prompt decision regarding the appeal and his call to the clerk, which will allow Defendant to be released forthwith and not be required to stay in custody for a week while the decision was stayed, only to find out next week that the government was not going to appeal it.